UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO GARCIA,<br><br>                                   Plaintiffs,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION, et al.,<br><br>                                   Defendants. | Case No.:   23CV2017-MMA(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>**[ECF No. 49]** |

Currently before the Court is Plaintiff's August 23, 2024 Motion to Compel [ECF No. 49] ("MTC")] and Defendant's August 30, 2024 opposition to the motion [ECF No. 50 ("Oppo.")]. For the reasons set forth below, Plaintiff's motion is **GRANTED** in part, and **DENIED** in part, as follows.

### DISCOVERY BACKGROUND

On June 10, 2024, Plaintiff served thirty (30) Requests for Production of Documents ("RFP") on Defendant. MTC at 6; see also ECF No. 49-1, Declaration of Nicholas Barthel ("Barthel Decl.") at Exh. 3. On June 22, 2024, Defendant served responses and objections to Plaintiffs RFPs. MTC at 6; see also Barthel Decl. at Exh. 4; Oppo. at 3; Declaration of Benjamin White ("White Decl.") at Exh. 12.

On July 31, 2024, Plaintiff's counsel sent Defendant's counsel a letter to meet and confer

regarding Defendant's response to the RFPs.  MTC at 6; Barthel Decl. at Exh. 5; Oppo. at 3.  On August 9, 2024, Defendant's counsel emailed a letter in response and later that day counsel had a phone call to discuss the disputed discovery responses.  Id. at 7; see also Barthel Decl. at ¶¶ 10-11, Exh. 6; Oppo. at 7.  Counsel were able to resolve some of the disputed requests but a dispute remained as to RFPs 85-86 and 89.  MTC at 7; Barthel Decl. at ¶ 14; Oppo. at 3.

On August 14, 2024, counsel for Plaintiff, Nicholas Barthel, and counsel for Defendant, Benjamin White, contacted the Court regarding a discovery dispute.  ECF No. 48.  On August 16, 2024, the Court issued a briefing schedule.  Id.  The parties timely filed their motion and opposition.  MTC, Oppo.  The Court deemed a reply unnecessary.  ECF No. 48.

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for

objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

## DISCUSSION

Plaintiff seeks an order requiring Defendant to supplement its discovery responses to RFPS 85-86 and 89, specifically seeking "all written communications and documents related to both [Defendant's] investigation into the Whitehead account relating to the fraud in this case ([RFP] 85) and all other incidents [of] fraud involving the Whitehead account ([RFP] 86)." MTC at 15. In addition, Plaintiff seeks an order requiring Defendant to "produce any supporting documentation [Defendant] reviews when determining whether or not to file a SAR on the Whitehead account." Id.

Defendant contends that Plaintiff's motion should be denied in its entirety as they have "incurred significant expense" in order to "keep up with Plaintiff's burdensome discovery," and Plaintiff is seeking "wholly irrelevant documents implicating third-party financial privacy." Oppo. at 2.

## RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that on August 23, 2023, an unknown individual applied for a loan in his name with Defendant, Navy Federal Credit Union ("NFCU"), in the amount of $9800. MTC at 5. The loan was approved and the funds were placed in Plaintiff's account but a very short time later, an unknown individual transferred $4500 to another NFCU account belonging to another NFCU customer Karnaisa Whitehead ("Whitehead"). Id. NFCU ultimately refunded Plaintiff $2797.93 of the $4500 transferred to the Whitehead account. Oppo. at 2.

Approximately one year prior, in September of 2022, the Whitehead account was involved in another unauthorized transfer of $4500 credited to her account. MTC at 5; Barthel Decl., Exh. 1, NFCU Correspondence to K. Whitehead dated Sept. 29, 2022. Defendant's counsel

declares that this correspondence was "inadvertently produced" to Plaintiff. White Decl. at ¶ 16; Exh. 13.

A. Request for Production Nos. 85 and 86.

Plaintiff requests an order requiring Defendant to produce documents related to other instances of fraud found with the Whitehead account and Defendant's investigations into that fraud. RFP Nos. 85 and 86. Plaintiff argues that these documents are necessary to prove the unreasonableness of Defendant's investigation, they will also support a finding for punitive damages, the request is proportional and not unduly burdensome, and Defendant's objections are boilerplate. MTC at 10-14.

Defendant contends that RFP No. 85 as it is written seeks documents relating only to the fraud investigation into Plaintiff's account and all relevant documents have been produced. Oppo. at 5. With respect to RFP No. 86, Defendant contends that this request "runs afoul of the proportionality factors in Rule 26(b)" and the request "implicates the privacy interests of third-party Navy Federal members." Id. at 6. Finally, Defendant contends RFP No. 89 is seeking documents related to a possible Suspicious Activity Report ("SAR") and Defendant is unable to produce any documents because it is prohibited from disclosing a SAR "or any information that would reveal the existence of a SAR." Id. at 7 (citing 12 C.F.R. § 21.11.)

RFP No. 85 and Defendant's response to the RFP are as follows:

> **REQUEST FOR PRODUCTION NO. 85:** "All documents, including written communications, related to Defendant's fraud investigation into the account belonging to Karnaisa Whitehead."
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 85:** Navy Federal objects to this request on the grounds that it is vague and ambiguous. The term "written communications" is an undefined term and it is unclear what is meant by this term in the request. This request is overbroad and not proportioned to the needs of this case as the timeframe in question is not defined making the scope of the request unduly burdensome. Further, any investigation Navy Federal conducted into Karnaisa Whitehead's account and the outcome of that investigation is not relevant to the claims at issue. Navy Federal further objects to the extent this request seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. As drafted, this request could seek information related to legal counsel's investigation into Plaintiff's claims in the instant case, which is privileged. Navy Federal stands on its objections as

>to the privileged materials and will not search for documents involving legal counsel. Subject to the above objections, Navy Federal directs Plaintiff to NFCU_Garcia_000002, NFCU_Garcia_000430, NFCU_Garcia_0431, and NFCU_Garcia_000432. Navy Federal withholds no responsive material on the basis of the objections stated above.

Barthel Decl., Exhs. 3, 4.

Defendant contends that reading RFP No. 85 in context with the allegations in the Plaintiff's Complaint, along with RFP No. 86, demonstrates that this request refers to only one investigation of fraud relating to Whitehead's account and that would be the alleged fraud investigation with regard to Plaintiff's account. Oppo. at 5. Defendant maintains that they have produced all the documents related to the fraud investigation arising from the transfer of funds from Plaintiff's account to Whitehead's account and Plaintiff does not dispute this. Id. Plaintiff's RFP 86, on the other hand, seeks documents relating to "other instances of fraud" related to Whitehead's account. Oppo. citing Barthel Decl., Exh. 3. The Court agrees that by referring to only one investigation in RFP No. 85, the discovery requested is limited to the investigation of the potential fraud between Plaintiff and Whitehead's account. The Court finds that Defendant has adequately responded to RFP No. 85 and DENIES Plaintiff's motion to compel further responses to this request.

RFP No. 86 and Defendant's response to the RFP are as follows:

>**REQUEST FOR PRODUCTION NO. 86:** "All documents, including written communications, related to other instances of fraud related to the account belonging to Karnaisa Whitehead."
>
>**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:** Navy Federal objects to this request on the grounds that it is vague and ambiguous. The term "written communications" is an undefined term and it is unclear what is meant by this term in the request. This request is overbroad and not proportioned to the needs of this case as the timeframe in question is not defined making the scope of the request unduly burdensome. Any investigation Navy Federal conducted into Karnaisa Whitehead's account and the outcome of that investigation is not relevant to the claims at issue. Further, it is unclear what is meant by the term "instances of fraud." Navy Federal further objects to the extent this request seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. As drafted, this request could seek information related to legal counsel's investigation into Plaintiff's claims in the instant case, which is privileged. Navy Federal stands on its objections as to the privileged materials and will not search for documents involving legal counsel. Navy Federal stands on its objections and declines as to provide any information related to additional

>investigations of Karnaisa Whitehead. Navy Federal withholds no responsive material on the basis of the objections stated above.

Barthel Decl., Exhs. 3, 4.

As set forth above, unlike RFP No. 85, this request specifically asks for written communications relating to "other instances of fraud" pertaining to Whitehead's account. MTC 10.

As an initial matter, the Court finds that the documents requested seek relevant information and they are proportional to the needs of the case. The information previously provided by Defendant to Plaintiff, even if it was "inadvertent," shows that Whitehead was involved in a similar fraud investigation, involving the identical amount of funds transferred to Whitehead's account, only one year prior to the facts giving rise to this action. White Decl., Exh. 13. Moreover, Defendant's person most knowledgeable ("PMK") testified that in the 2022 incident involving Whitehead's account, her account "was used to receive funds taken from a victim of an account takeover scam" which is the same allegations Plaintiff raises in this action. Barthel Decl. at ¶ 3. Both instances involved allegedly unauthorized transactions in the amount of $4500 into Whitehead's account.

Defendant contends that this request "implicates the privacy interests of third-party Navy Federal members." Oppo. at 6. Whitehead and the party involved in the 2022 transfer are both NFCU members. Id. Defendant already provided a portion of the documents requested when they provided the 2022 letter to Whitehead regarding the $4500 unauthorized transaction to her account. White Decl., Exh. 13. Defendant argues that producing further documents "will necessarily implicate the sensitive banking information of these customers." Oppo. at 6-7 (citing Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995). However, Soto involved a discovery dispute over police officers' personnel files and the court found that the parties "privacy interests may be sufficiently protected with the use of a 'tightly drawn' protective order." Soto, 162 F.R.D. at 617. Here, the parties have already entered into a Protective Order, see ECF No. 29, and Defendant has failed to show how the existing Protective Order is insufficient to protect the privacy interests arising from this document request.

 Because the request seeks relevant information and Defendant has not established that the existing protective order is inadequate or that this request is not proportional to the needs of the case, Plaintiff's motion to compel further responses to RFP No. 86 is GRANTED.

RFP No. 89 and Defendant's response to the RFP are as follows:

> **REQUEST FOR PRODUCTION NO. 89:** "All documents, that Defendant reviewed when deciding whether or not to file a Suspicious Activity Report related to Karnaisa Whitehead."
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 89:** Federal law prohibits banks, including credit unions, from disclosing certain information. See 31 CFR 1020.320€; 31 U.S.C. 5318(g)(2)(A)(i). In citing these provisions, Navy Federal makes no representations regarding documents or information exist that would meet the criteria of documents or information that Navy Federal would be prohibited from disclosing. Navy Federal stands on its objections and declines as to provide any information related to a filing a Suspicious Activity Report. Navy Federal withholds no responsive material on the basis of the objections stated above.

Barthel Decl., Exhs. 3, 4.

Under the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318 et seq., banks and other financial institutions are required to report suspicious transaction activities to the appropriate authorities through a Suspicious Activity Report ("SAR"). Plaintiff acknowledges that the existence of a SAR cannot be disclosed but contends that "supporting documents" can be produced as long as the disclosure of these documents does not reveal the existence of a SAR. MTC at 15 (citing McNamara v. Wells Fargo & Co., . Defendant contends, however, that they cannot produce any documentation related to this request because "[n]o national bank, and no director, officer, employee, or agent of a national bank, shall disclose a SAR or any information that would reveal the existence of a SAR." Oppo. at 7 (citing 12 C.F.R. section 21.11).

The bar on disclosure does not necessarily extend to "supporting" documentation, "as long as such disclosure would not reveal the existence or contents of a SAR." McNamara v. Wells Fargo & Co., No. 21cv1234-LAB-WVG, 2022 WL 3019855, at *3 (S.D. Cal. July 29, 2022.) (citing Erhart v. B of I Holding, Inc., No. 15cv2287-BAS-NLS, 2018 WL 5994417, at * 6 (S.D. Cal. Nov. 15, 2018). The "key query is whether any … documents suggest, directly or indirectly, that a SAR was or was not filed." In re Shefsky, No. 23cv0633-JCM-BNW, 2024 WL 2836114, at *2 (D. Nev. June 4, 2024) (citation omitted). Here, the phrasing of the request, seeking all

documents reviewed by Defendant in order to determine whether or not a SAR should be filed, necessarily implies that any document provided in response would disclose whether or not a SAR was filed which is privileged. There is "strong public policy that underlies the SAR system as a whole ….[which] leans heavily in favor of applying SAR confidentiality not only to the SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not." Id. (citing 75 Fed. Reg. 75576, 75579 (Dec. 3, 2010)).

Accordingly, Plaintiff's Motion to Compel further responses to RFP No. 89 is DENIED.

## CONCLUSION

Plaintiff's Motion to Compel further responses to RFP Nos. 85 and 89 is DENIED. Plaintiff's Motion to Compel further responses to RFP No. 86 is GRANTED and Defendant is ordered to produce documents responsive to this RFP, subject to the parties' Protective Order, by **September 19, 2024**.

**IT IS SO ORDERED**.

Dated: 9/9/2024

Hon. Barbara L. Major
United States Magistrate Judge