UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO GARCIA,<br><br>                                   Plaintiffs,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION, et al.,<br><br>                                   Defendants. | Case No.:   23CV2017-MMA(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>**[ECF No. 53]** |

Currently before the Court is Plaintiff's September 18, 2024 Motion to Compel [ECF No. 53] ("MTC")] and Defendant's September 30, 2024 opposition to the motion [ECF No. 54 ("Oppo.")]. For the reasons set forth below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

## DISCOVERY BACKGROUND

On July 2, 2024, Plaintiff served fourteen (14) Requests for Production of Documents ("RFP") on Defendant. MTC at 7, see also ECF No. 53-1, Declaration of Nicholas Barthel ("Barthel Decl.") at Exh. 1 [Set Three].  On August 15, 2024, Defendant served responses and objections to Plaintiff's RFPs. MTC at 7; see also Barthel Decl. at Exh. 2 [Set Three]; Oppo. at 3; Declaration of Benjamin White ("White Decl.") at Exh. 12.

On August 16, 2024, Plaintiff's counsel sent Defendant's counsel a letter to meet and

confer regarding Defendant's response to the RFPs. MTC at 7; Barthel Decl. at Exh. 3; Oppo. at 3. On August 26, 2024, Defendant's counsel emailed a letter in response and the following day counsel had a phone call to discuss the disputed discovery responses. Id. at 7; Barthel Decl., Exh. 4; Oppo. at 7. The parties were unable to resolve the disputes as to RFPs 91-92, 98, and 99-104. MTC at 8; Oppo. at 4.

On August 12, 2024, Plaintiff served five (5) RFPs on Defendant. MTC at 8, Barthel Decl. at Exh. 5 [Set Four]. On September 11, 2024, Defendant served responses and objections to Plaintiff's RFPs. MTC at 9; Barthel Decl. at Exh. 6. The parties met and conferred and were unable to resolve the dispute as to RFP 108.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for

2

23CV2017-MMA(BLM)

objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

## DISCUSSION

Plaintiff seeks an order requiring Defendant to supplement its discovery responses to provide documents related to "(A) statistics of identity theft and credit reporting investigations, including its investigators' Production sheets; (B) Splunk Report of the fraudster's IP Address; [and] (C) documents reflecting Defendant's debt collection activity." MTC at 10-11.

A. Request for Production

RFP Nos. 91and 92 and Defendant's responses are as follows:

**RFP NO. 91**: All documents in Defendant's possession or control that details the statistics surrounding identify theft amongst Defendant's accounts at any time in the last five years, including, but not limited to, how many members purport to be a victim of identity theft; how many allegations of identity theft were verified or denied as being identity theft; the type of identity theft reported; number of lawsuits filed against Defendant based on identity theft; and the amount of money Defendant lost due to identity theft.

**RESPONSE**: This Request is overbroad and irrelevant in seeking numerous documents without limitation to the claims and defenses in this case. Navy Federal objects to this request on the grounds that it is overbroad and not proportionate to the needs of this case as it is not specific to the limited claims and defenses at issue in this case, making the scope of the request unduly burdensome. Further, the term "statistics" is undefined and as written this request is unreasonably broad. Navy Federal stands on its objections.

**RFP No. 92**: All documents in Defendant's possession or control detailing statistics surrounding investigations into credit reporting disputes within the last five years, including, but not limited to, how many credit disputes Defendant received; how

> many disputes were found to be valid (i.e. the disputed information was corrected); how many disputes Defendant's investigators [rejected] (i.e. the disputed information was verified as accurate); and the average time that each investigator spent investigating each credit dispute.
>
> **RESPONSE**: This Request is overbroad and irrelevant in seeking numerous documents without limitation to the claims and defenses in this case. Navy Federal objects to this request on the grounds that it is overbroad and not proportionate to the needs of this case as it is not specific to the limited claims and defenses at issue in this case, making the scope of the request unduly burdensome. Further, the term "statistics surrounding investigations" and "disputes" are undefined and as written this request is unreasonably broad. Navy Federal stands on its objections.

Barthel Decl., Exh. 1-2, 5-6.

Plaintiff argues that the requested documents are relevant to Defendant's claims that its internal policies and procedures are adequate and reasonable. MTC at 12. Specifically, Plaintiff argues that the "number of disputes that an investigator reviews per hour[,]" whether the company's procedures are designed to encourage cursory review and quick resolution, and the percentage of claims that are denied are relevant to whether Defendant's investigation was reasonable and Defendant's conduct willful. Id. at 12-13. Plaintiff asserts that these requests seek such information.

Defendant objects to these requests on the grounds they are overbroad, create an undue burden, and are "grossly disproportionate to the needs of the case." Oppo at 5, 7; White Decl., Exhs. 1,2. Defendant notes that Plaintiff "has already conducted extensive discovery related to his individual claims." Id. at 6. Defendant argues that the requested discovery would be burdensome to compile and is not proportional to the individual claims at issue in this case. Id. at 5-8. For example, Defendant asserts that these requests would require Defendant to review all lawsuits filed against them in the last five years to determine "which of these [lawsuits] are 'based on identity theft." Id. This would also require Defendant to individually review every lawsuit by determining the individual judgments, attorneys' fees, and settlements to respond to the question as to the "amount of money Defendant lost due to identify theft." Id. at 5-6.

Defendant further contends compiling five years of data "generally relating to credit disputes" is minimally relevant and not proportional to Plaintiff's individual claims. Id. at 7.

District courts have broad discretion to determine relevancy for discovery purposes. D.M. v. County of Merced, 2022 WL 229865, at * 2 (E.D. Cal. Jan. 26, 2022) (citing) Hallett, 296 F.3d at 751 and Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)"). "When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Cancino v. McAleenan, 2020 WL 13322485, at * 4 (S.D. Cal. Mar. 23, 2020) (quoting Fed. R. Civ. P. 26(b)(1)).

The Court finds that Plaintiff has not shown that the information sought in these RFPs is relevant and proportional to the needs of the case. Plaintiff cites to two cases to support his argument that the request is not burdensome and both cases are putative class action matters. MTC at 13 (citing Lofton v. Verizon Wireless, LLC, 308 F.R.D. 276 (N.D. Cal. 2015) (Unintended recipient of debt collector's call on cellular telephone filed putative class action against cellular telephone company who had contracted with the debt collector); Shaw v. Experian Info. Sols, Inc., 306 F.R.D. 293 (S.D. Cal. 2015) (Consumers brought putative class action against consumer reporting agency and furnishers of information, alleging violations of the Fair Credit Reporting Act).) The instant case is not a class action. While the scope of discovery sought in these RFPs may be appropriate for a class action, it is overbroad and not proportional for a single plaintiff with alleged misconduct during a brief time period. In addition, despite Plaintiff's assertion that this information is readily available in an existing document, Defendant correctly notes that these

requests are drafted in such a way that it would require Defendant to conduct a detailed review of five years of documents and lawsuits to respond.  The information sought in these RFPs go beyond "tracking disputes and investigations."

In addition, Plaintiff already has obtained substantial discovery relating to the individual claims asserted in this lawsuit.  For example, Plaintiff has deposed the investigators who were involved in investigating Plaintiff's individual claim of identity theft that gave rise to this action. Oppo. at 8; White Decl. at ¶ 5, Ex. 3, Depos. of Stephanie Lowery, Lauren Gallahan, Vendol Austin Black, III, Kiona Shamone Holley, Cornelia Wielgus.  Plaintiff has not established the relevance, need, and proportionality of the instant discovery requests that seek all documents relating to identity theft and credit reporting disputes over all of Defendant's accounts and a five year time period.

Given the breadth of the requests, the burden to Defendant to collect the relevant responsive documents, the individual claims asserted in this case, and the extensive discovery already conducted, the Court finds that the requests are overbroad and not proportional. Accordingly, Plaintiff's motion to compel further responses to RFPs 91 and 92 is **DENIED**.

RFP No. 108 and Defendant's responses are as follows:

> **RFP No. 108**: For each of Defendant's employees that investigated any of Plaintiff's disputes, please produce each employee's Production Sheets for the six months before and after the investigation related to this lawsuit.
>
> **RESPONSE**: Navy Federal objects to this request as vague and ambiguous because the term "Production Sheets" is undefined.  Navy Federal further objects to this request as duplicative, because Plaintiff has already obtained extensive deposition testimony regarding the production of the Navy Federal employees involved in investigating Plaintiff's disputes.  See Fregoso v. Wells Fargo Dealer Servs., Inc., No. CV 11-10089 SJO AGRX, 2012 WL 4903291 at *8 (C.D. Cal. Oct. 16, 2012) (discussing productivity information obtained from deposition testimony). Navy Federal further objects to this request as overly broad, unduly burdensome, and not proportionate to the needs of the case, which involves a $2,000 loan balance.  Navy Federal stands on its objections.

Barthel Decl., Exhs. 5-6.

Defendant contends that the information sought in this RFP is duplicative of "exhaustive discovery Plaintiff already conducted." Oppo. at 7.  Specifically, Defendant has produced several witnesses who have testified to the number of disputes they handle daily and monthly based on their production sheets.  White Decl., Ex. 3.

Plaintiff cites to a number of cases arguing that "[c]ourts often find the number of disputes that an investigator reviews per hour is evidence that supports whether investigation and procedures are unreasonable."  MTC at 12 citing Miller v. Westlake Servs. LLC, 637 F.Supp.3rd 836, 851 (C.D. Cal. 2022); DiPrinzio v, MBNA Am. Bank, N.A., 2005 WL 2039175, at *10 (E.D. Pa. Aug. 24, 2005); Fregoso v. Wells Fargo Dealer Servs., Inc., 2012 WL 4903291, at *8 (C.D. Cal. Oct. 16, 2012).  While the cited cases do not completely support Plaintiff's argument, the Fregoso court found that deposition testimony of an investigator that she handled fifty disputes a day, along with several other factors, was "ample evidence" to support the plaintiff's contention that the investigation was unreasonable.  Fregoso, 2012 WL 4903291, at *8.

Here, Plaintiff has obtained deposition testimony that one investigator handled one hundred disputes a day, another handled fifty disputes a day, and a third investigator testified that she handled thirty investigations a day on average.  See generally White Decl., Exh. 3. These witnesses testified that they knew the average amount of disputes they handled per day because they were shown their production sheets and they relied on the production sheets to provide their testimony.  See id. As such, the Court finds that the actual production sheets are relevant to the instant dispute, including by providing Plaintiff the ability to verify the accuracy of the investigators' testimony, and the reports are readily available. The Court therefore **GRANTS** Plaintiff's motion to compel further response to this RFP but limits the time period to three months prior to the investigation and one month after the investigation.

/ / /

/ / /

/ / /

/ / /

RFP No. 98 and Defendant's response is as follows:

**RFP No. 98**: All documents in Defendant's possession or control related to IP address 45.164.23.89 and its involvement in fraudulent activity.

**RESPONSE to RFP No. 98**: Navy Federal objects to this request on the grounds that it is vague and ambiguous. As written, it is unclear what is meant by "involvement in fraudulent activity." Navy Federal further objects to the extent this request assumes the "IP Address 45.164.23.89" was or is involved in "fraudulent activity." Further, this request is unduly burdensome as the scope of the request is not limited to the claims and defenses at issue in this case. Further, this request may implicate the private banking information of third party Navy Federal customers. Navy Federal further objects to the extent this request seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. As drafted, this request could seek information related to legal counsel's investigation into Plaintiff's claims in the instant case, which is privileged. Navy Federal stands on its objections as to the privileged materials and will not search for documents involving legal counsel. Subject to the above objections, Navy Federal directs Plaintiff to the following documents NFCU_Garcia_000408. Navy Federal withholds no responsive material on the basis of the objections stated above.

Barthel Decl., Exh. 1.

Despite the broad nature of Plaintiff's request, the parties agree that the only remaining dispute is over the "Splunk Report" for the listed IP address 45.164.23.89, which is not an IP address used by Plaintiff. See MTC at 15 (Plaintiff seeks the "Splunk Report related to the fraudster's IP address"); Oppo. at 8-10. Defendant explains that its "Splunk" system "tracks online access attempts for member accounts." White Decl. at ¶ 8. As part of its initial investigation into the claims asserted in this litigation and prior to the commencement of this litigation, Defendant prepared a Splunk report "specific to Plaintiff's account showing each attempt to access Plaintiff's account online" and this report included attempts by IP address 45.164.23.89. Id. This Splunk report has been produced to Plaintiff. Oppo. at 10 ("To the extent this IP address was involved in fraudulent activity on Plaintiff's account, Navy Federal has already produced all available information and documents, including the Splunk report detailing

when this IP address applied for the loan."). During the instant litigation, defense counsel instructed Defendant to conduct a new search for IP number 45.164.23.89 "across the Splunk system." White Decl. at ¶ 3. It is this second report that is at issue in this motion.

Defendant argues that the second report is protected by the attorney work product doctrine because it was "generated during this litigation, and because of this litigation" and would "not exist had this litigation not arisen." Id. Plaintiff disagrees and explains that Defendant's investigator, Michah Freeman, testified that he would "generate this report regularly as part of his investigation checklist" and therefore, these reports are regularly generated during fraud investigations whether or not litigation later occurs. MTC at 16. Plaintiff argues that the fact that defense counsel had Mr. Freeman recreate the report does not transform the report into attorney work product. Id. at 16-17.

Rule 26(b)(3) of the Federal Rules of Civil Procedure sets forth the federal attorney work product doctrine. It provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Such materials "may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id.

The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, to be entitled to the protection of the privilege, the primary motivating purpose behind the creation of the materials must be as an aid in possible future litigation. See Griffith v. Davis, 161 F.R.D. 687, 698-99 (C.D. Cal. June 9, 1995) (citations omitted). That is, work product protection applies only to material "that would not have been generated but for the pendency or imminence of litigation." See id. (citing Kelly v. City of San Jose, 114 F.R.D. 653, 659 (N.D. Cal. Feb. 26, 1987)).

Here, the evidence provided by Defendant establishes there was one Splunk report in Defendant's possession prior to the onset of litigation and that report was the "Splunk report specific to Plaintiff's account showing each attempt to access Plaintiff's account online." Oppo at

9; White Decl. at ¶ 8. Defendant produced this report to Plaintiff. Id. During the course of litigation, Defendant's counsel asked "Navy Federal to search for IP address 45.164.23.89 across the Splunk system," which would include a search of all member accounts as opposed to just Plaintiff's account. This search generated a new Splunk report which is the report sought by Plaintiff. White Decl. at ¶ 8; Barthel Decl. at ¶ 12. Accordingly, the Court finds that the report at issue in this motion, the second Splunk report, is not identical to the first report and was produced during litigation at the request of defense counsel and therefore is attorney work product.

With regard to Mr. Freeman's testimony, Plaintiff asserts that he testified that he regularly generated a Splunk report during fraud investigations whether or not litigation later occurs. MTC at 16; Barthel Decl. at ¶ 11 ("During an investigator's deposition, he testified that part of his investigation checklist is to generate a report in Splunk showing all other times the IP Address appeared in the Splunk system associated with other accounts."). Plaintiff does not provide the deposition testimony that supports this assertion. Defendant responds that Mr. Freeman testified that he could run this type of report but he did not testify that "he ever generated this report specifically for IP address 45.164.23.89." Oppo. at 9, White Decl. at ¶ 9, Ex. 5, Micah Freeman Depo. The Court has reviewed the deposition testimony provided by Defendant and it indicates that Mr. Freeman answered "yes" to counsel's question of whether Mr. Freeman "can" run a specific type of report. Id. at Exh. 5. The transcript does not address what type of reports Mr. Freeman prepared during this investigation or when and why he prepared them or whether the two reports created in this case are the same or different. Id. Plaintiff has not established that the report at issue in this motion was generated in the normal course of business, is identical to the first Splunk report that was produced to Plaintiff, or otherwise is not covered by the attorney work product doctrine..

Accordingly, the Court finds that the second Splunk report at issue in this motion is covered by the attorney work product privilege as it is a new report that was generated at the request of defense counsel from their client specifically for this litigation, and was not created in the normal course of business. Hooke v. Foss Maritime Co., 2014 WL 1457482, at *2 (N.D.

Cal. Apr. 10, 2014) ("A party asserting the privilege for [] reports should show that the reports were prepared at the specific direction of counsel in anticipation of litigation rather than pursuant to a general protocol or course of business established by defendant.").

Plaintiff can overcome the work product privilege if he shows that he has a substantial need for the requested report to prepare his case and that he cannot obtain equivalent information without undue hardship.  See Fed. R. Civ. P. 26(b)(3)(A)(ii).  Plaintiff offers no argument to show that he has a substantial need for this report or that he could not obtain this information without undue hardship. Therefore, Plaintiff has not overcome the attorney work product protection.  Accordingly, Plaintiff's motion to compel further response to RFP 98 is **DENIED**.

RFP Nos. 99-104 and Defendant's responses are as follows:

> **RFPs No. 99-104**: Produce documents sufficient to identify Defendant's total amount of expenses spent for the past 3 years. (RFP No. 99.) Produce documents sufficient to identify the amount of business expenses Defendant has devoted to debt collection in the past 3 years. (RFP No. 100).  Produce documents sufficient to identify Defendant's total amount of revenue for the past 3 years. (RFP No. 101) Produce documents sufficient to identify Defendant's total amount of revenue earned from debt collection for the past 3 years. (RFP No. 102) Produce documents sufficient to identify Defendant's total amount of profit for the past 3 years.  (RFP No. 103)  Produce documents to identify Defendant's total amount of profit from collecting debts in the past 3 years. (RFP No. 104).
>
> **RESPONSES to RFP 99-104**[1]: These requests are overbroad and irrelevant in seeking numerous documents without limitation to the claims and defenses in this case.  Navy Federal objects to this request on the grounds that it is overbroad and not proportionate to the needs of this case as it is not specific to the limited claims and defenses at issue in this case, making the scope of the request unduly burdensome.  Further, the terms "expenses," "business expenses," "revenue," "revenue earned form debt collection," and "profit," are undefined and as written these requests are unreasonably broad.

---

[1] The Court combined Defendant's responses as they were virtually identical with exception of the objections to specific terms set forth in the RFPs.

> Subject to the above objections, Defendant directs Plaintiff to Navy Federal's Statement of Financial Condition as of December 31, 2023, available at https://www.navyfederal.org/content/dam/nfculibs/pdfs/financial-reports/Statement-of-Financial-Condition_Q4_FINAL.pdf.

Barthel Decl., Exhs. 1,2,5,6.

Plaintiff contends that these documents are necessary to prove an element of the Rosenthal Fair Debt Collection Practices Act ("RFDCA") because they will prove that Defendant is a debt collector who regularly engages in debt collection. MTC at 18 (citing Romero v. Monterey Fin. Servcs. LLC, 2021 WL 268635, at * 6 (S.D. Cal. Jan. 27, 2021) ("The RFDCPA ' mimics or incorporates by reference the [Fair Debt Collections Practices Act ("FDCPA")]'s requirements.'") (citation omitted.). Whether or not the Defendant is a "debt collector" is an element of both causes of action. Plaintiff explains that that he would not have to "seek all this information if NFCU was willing to admit that it is a debt collector under Request for Admission [("RFA")] No. 48" but "NFCU declined the compromise and continues to put its status as a "debt collector" at issue." Barthel Decl. ¶ 13. Plaintiff does not provide RFA No. 48 or the corresponding response by Defendant so the Court does not know whether Defendant refused to admit being a debt collector as to consumers in general or a debt collector as to Plaintiff and the alleged debts at issue in this case.[2]

The evidence provided by Defendant indicates that Defendant does, in general, act as a debt collector and engage in debt collection. White Decl. at ¶ 6 ("During Lisa Paulson's Rule 30(b)(6) deposition, she answered several questions relating to Navy Federal debt collection practices."); see also Oppo. at 12, fn. 3 (Navy Federal has already produced information about its general debt collection practices which includes "Delinquent Loan Information" (citing https://www.navyfederal.org/content/dam/nfculibs/pdfs/financial-reports/Statement-of-Financial-Condition_Q4_FINAL.pdf; https://www.navyfederal.org/content/dam/nfculibs/pdfs/financial-reports/Statement-of-Financial-Condition_Q4_FINAL.pdf)).

Plaintiff argues there is a dispute because Defendant objected to this line of questioning

---

[2] Defendant stated that it denied it was a debt collector "on the basis that it is not seeking to collect a debt from Plaintiff." Oppo. at 12.

to Ms. Paulson in her deposition.  Barthel Decl. at ¶ 16.  However, Defendant's counsel declares that Ms. Paulson answered these questions relating to Defendant's debt collection practices and they "only stood on its objection to producing a third witness for Rule 30(b)(6)" to discuss Defendant's collection activities relating to consumer accounts.  White Decl. at ¶ 7, Ex. 4.  They did not object to her answering the questions relating to Defendant's debt collection practices that were asked by Plaintiff's counsel.  Id.  While neither party submitted Ms. Paulson's testimony, the Court finds that Defendant has provided evidence regarding its debt collection activities.

The question before the Court with regard to this dispute is whether the requested information is relevant and proportional to the issue of whether Defendant acted as a debt collector in this case.  Defendant argues that whether they are a "debt collector" subject to liability to Plaintiff under the RFDCPA "is dependent on the specific relationship between the plaintiff and the alleged collector."  Oppo. at 12 (citing Aliff v. Vervent, Inc., 2022 WL 3588322, at *10 (S.D. Cal. Aug. 22, 2022)).  In Aliff, the court found that the plaintiff did not allege her debts were in default, and therefore defendants were not "debt collectors under the FDCPA, as it exempts those collecting or attempting to collect on a debt that was not in default when it was acquired."  Aliff, 2022 WL 3588322, at *10 (citation omitted).  The court further found that it would be possible to find the defendants were debt collectors if class representatives were substituted in plaintiff's place and alleged that their debts were in default at the time collection efforts were made.  Id.  Plaintiff does not address the issue of whether the debt collector status focuses on the Defendant's debt collection activities as to consumers in general or as to the Plaintiff in this case and his alleged debts.  See MTC.

Based on the evidence presented to the Court, the Court finds that the factual dispute between the parties is not whether Defendant was a debt collector as to any consumers but whether it was a debt collector as to Plaintiff.  The discovery requested in these RFPs seek information about Defendant's general debt collection activities over a three-year period.  Under Aliff, this information is not relevant to the current dispute and is duplicative of other discovery indicating that Defendant generally engages in debt collection activities as to some consumers.

The requests do not seek information as to any debt collection activities between Plaintiff and Defendant or other interactions between Plaintiff and Defendant regarding Plaintiff's accounts.

The Court therefore finds that Plaintiff has not established that the discovery sought in RFPs 99 through 104 is relevant or proportional to the claims in this matter. Therefore, Plaintiff's motion to compel further responses to RFPs 99-104 is **DENIED**.

## CONCLUSION

Plaintiff's Motion to Compel is **GRANTED** as to RFP No. 108.  Defendant is ordered to provide the production sheets requested for the three months prior to the initiation of the investigation through one month after the completion of the investigation by **October 28, 2024**.  Plaintiff's Motion to Compel is **DENIED** as to RFP Nos. 91, 92, 98, and 99-104.

**IT IS SO ORDERED**.

Dated:  10/18/2024

Hon. Barbara L. Major
United States Magistrate Judge